UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

| | |
|---|---|
| CHRISTOPHER GREEN, | ) |
| Plaintiff, | ) Civil Action No. 09-369-KSF |
| v. | ) |
| DISTRICT COURT, KENTUCKY, *et al.* | ) **MEMORANDUM OPINION AND** |
| Defendants. | ) **ORDER** |

\*\*\*\*\* \*\*\*\*\* \*\*\*\*\* \*\*\*\*\*

Plaintiff Christopher Green is in the custody of the Federal Bureau of Prisons ("BOP") at the United States Penitentiary-Florence ("USP-Florence"), located in Florence, Colorado.

Green challenges the conditions of his confinement at both the United States Penitentiary-McCreary ("USP-McCreary"), located in Pine Knot, Kentucky, and USP-Florence. He named as defendants various federal officials employed at USP-McCreary.[1] Green alleges that by failing to protect him from physical harm which another inmate inflicted upon him, the defendants violated his rights guaranteed by the Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

---

[1] Green named the "District Court, Kentucky" as the sole defendant in his original Complaint, R. 2. In his Amended Complaint, R. 2, Green named the following additional defendants, all of whom he identified as being employees of USP-McCreary: (1) R.G. McLeod, Associate Warden; (2) Lieutenant "Burchette," Special Investigative Services ("SIS"); (3) Lieutenant "Blair," Special Housing Unit ("SHU"); (4) Officer Baker, SHU; and (5) Unknown USP-McCreary officials.
    The Clerk of the Court docketed this civil rights action as falling under 42 U.S.C. § 1983. However, because Green asserts claims in his Amended Complaint against officials acting under color of federal law, his claims more properly fall under the scope of 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

Green has also filed a motion seeking an Order prohibiting USP-Florence officials from interfering with his mail and other legal documents, R. 11, and a motion to require the BOP to produce documents for inspection and copying, R. 14.

Because this is a civil action being pursued by a prisoner against government officers, the Court now screens this matter under 28 U.S.C. § 1915A. This section requires the Court to dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from defendants who are immune from such relief.

*Pro se* complaints are held to less stringent standards than those drafted by attorneys. *See Wagenknect v. United States*, 533 F.3d 412, 415 (6th Cir. 2008). Moreover, at the screening phase, the allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). For the reasons set forth below, the Court will dismiss Green's original Complaint and Amended Complaint with prejudice; deny his motion seeking an Order prohibiting USP-Florence officials from interfering with his mail and legal documents; and deny his motion to inspect and copy documents.

## THE COMPLAINT AND AMENDED COMPLAINT

### 1. Factual Allegations

In his original Complaint, Green appeared to challenge numerous aspects of his BOP custody, both at USP-McCreary and USP-Florence. He named no individual defendants, only the "District Court, Kentucky." Because Green's original Complaint was illegible, the Court instructed him to complete and file a legible E.D. Ky. 520 Civil Rights Complaint Form. *See* Orders, R. 4 and R. 7. On February 5, 2010, Green filed an Amended Complaint in which he asserted constitutional claims

against four federal officials and John Doe defendants employed by USP-McCreary. R. 10. The following is a summary of Green's allegations.

On June 4, 2009, while confined in the Segregated Housing Unit of USP-McCreary pending an Special Investigative Services ("SIS") investigation, Defendants McLeod and Burchette accused Green of manufacturing and disseminating, among the inmates, a list of inmate informants. Because McLeod made these accusations within the hearing range of other gang-affiliated and ethnic inmates, he placed his (Green's) life in danger not only at USP-McCreary, but also at any other BOP facility. Burchette and McLeod's conduct subjected him to harm from other inmates.

Burchette also discussed Green's pending SIS investigation with other USP-McCreary inmates; used inflammatory remarks about him; defamed him; and incited inmates prejudiced against him to make incriminating statements about him. Between August 29, 2009 and September 2, 2009, Burchette and Blair removed him from the safety of his cell and subjected him to physical harm by intentionally placing him in a cell with an inmate with whom Green had known conflicts and from whom Green was to remain separated. Burchette and Blair allegedly threatened to restrain Green with chains if he refused to go into the cell. Green alleges that the inmate with whom he was placed severely hurt him.

Green alleges that when he verbally complained to Baker, Baker informed him that he would lie and deny that Green had ever been moved into the cell with the inmate. Green further complains that Baker searched his cell, illegally removed copies of his civil complaint, and bribed other inmates to lie and deny that Green had been forced to move into the cell with the inmate who allegedly assaulted him.

Green seeks various forms of relief: $10 million in damages; release from BOP custody and/or transfer to a safer state or private entity closer to his family; the clearing of his name; reprimand of the USP-McCreary officers; and the unspecified protection of other inmates.

2. Exhaustion Allegations and Exhibits

In Section IV(A) of the pre-printed Complaint Form, which inquires whether the plaintiff administratively exhausted his claims, Green indicated that he had submitted all requisite administrative remedies. R. 10, p. 4. He did not provide the dates on which he took these steps, but instead wrote "confiscated" in the blank line provided for identifying the date each administrative remedy was filed. *Id*. Later, in Section IV (C) of the Complaint Form, Green stated that some of his grievances had been purposely lost or destroyed; that some had been returned; that some had been received and returned to him; and that some were returned unanswered. *Id*. at 6 .

Green provided various attachments relative to administrative exhaustion. The Court has constructed a summary of Green's various exhaustion efforts.

1.  Remedy No. 553485-F1:  On August 31, 2009, the Administrative Remedy Coordinator ("ARC") at USP-McCreary received Green's BP-9 "Request for Administrative Remedy," No. 553485-F1, in which Green complained about being placed in the cell with the inmate whom he claimed attacked him.[2] R. 10-2. It appears that Green's BP-9 request was denied, and that he filed a BP-10 appeal to the Mid-Atlantic Regional Office ("MARO"), because the MARO issued a "Rejection Notice" on November 6, 2009. R. 10-2, p. 7. The MARO informed Green that the

---

[2] The ARC classified Green's grievance as a claim of "unprofessional, inappropriate conduct or misconduct by staff." *Id*.

claims he raised were not sensitive in nature, thus not warranting emergency intervention, and that he should file a remedy request "at the appropriate level via regular procedures." *Id*.

2. Remedy No. 561891-FI: On October 1, 2009, Green submitted a new BP-9 "Request for Administrative Remedy" alleging that between August 31, 2009, and September 2, 2009, the inmate, from whom he should have been separated, assaulted him and inflicted personal injuries on him. R. 10-2, p. 12. The USP-McCreary ARC received this new remedy request, Remedy No. 561891-FI, on October 20, 2009.[3] *Id*., p. 8.

On November 12, 2009, Warden Eric D. Wilson acknowledged receipt of Green's claims for informational purposes; advised Green that his claims would be reviewed; explained that Green had no right to review investigations of staff misconduct; and otherwise denied Green's claim that USP-McCreary staff members had acted inappropriately by placing him in a cell with an inmate from whom he was to be separated. *Id*., p. 15.

3. Remedy No. 564197-FI: On November 10, 2009, the USP-McCreary ARC rejected Green's subsequent BP-9 "Request for Administrative Remedy," assigned the number 564197-FI, because Green had not demonstrated that he had attempted informal resolution prior to submitting his administrative remedy. *Id*., p. 13.[4]

Green apparently pursued this same administrative remedy after he was transferred to USP-Florence. On December 21, 2009, the USP-Florence ARC rejected Green's administrative remedy

---

[3] The ARC classified this grievance as both a request to be transferred for protection reasons, and as a complaint against staff. *Id*.

[4] The Administrative Remedy Coordinator again classified Green's new grievance as a claim asserting "unprofessional, inappropriate conduct or misconduct by staff." *Id*.

under this same number, stating that Green had not demonstrated that he had attempted informal resolution prior to submitting his BP-9 Request for Administrative Remedy. *Id.*, p. 14.

4. <u>Remedy No. 571430-A1</u>: On January 6, 2010, the BOP Central Office issued a "Rejection Notice" informing Green that his request for a transfer for protection reasons was not a sensitive issue, and that he should file a remedy request "at the appropriate level via regular procedures." *Id.*, p. 16.

## DISCUSSION

### 1. The Original Complaint

A complaint may be dismissed for failure to state a claim if "it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The Court must determine whether the original Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S.Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (2)).

In Green's original Complaint, he appeared to challenge numerous aspects of his confinement in BOP custody, both at USP-McCreary and USP-Florence, but the only defendant he named was the "District Court, Kentucky." Green did not specify whether he was suing either a "District Court" within Kentucky's state Court system or this federal District Court. Regardless, neither entity would have had any personal or direct involvement in the issues about which he complained. While the pleadings of *pro se* litigants are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Green's *pro se* status does not excuse his failure to name the proper parties. *See Brown v. Frey*, 806 F.2d 801, 804 (8th Cir.1986) (*pro se* litigants are not excused from complying with substantive and procedural law).

Finally, to the extent that Green may have alleged in his original Complaint that he was in physical danger from alleged gang members at USP-McCreary, that claim is now moot by reason of Green's subsequent transfer to USP-Florence. Generally, an inmate's transfer to another prison moots his request for injunctive relief. *Lyons v. Azam*, 58 F. App'x 85, 87 (6th Cir. 2003); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Jones v. Pancake*, No. 06-188, 2007 WL 2407271, at *2 (W. D. Ky. August 20, 2007).

Green's original Complaint has been superceded by his Amended Complaint and, accordingly, has no effect. To the extent any portion of the original Complaint might be viable, it does not contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The Court will dismiss Green's original Complaint with prejudice for failure to state a claim upon which relief can be granted.

2. <u>The Amended Complaint</u>

A. <u>Claim Seeking Damages under the Fifth, Eighth and Fourteenth Amendments</u>

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires state and federal prisoners to exhaust all available administrative remedies before bringing an action with respect to prison conditions under federal law. Green's Eighth Amendment claims seeking monetary damages from the defendants will be dismissed without prejudice, because it is clear from the face of the Amended Complaint, R. 10, that he did not pursue the administrative exhaustion procedures set froth in 28 C.F.R. § 542.10-19. [5]

In Green's second remedy, No. 561891-FI, he alleged that the defendants improperly placed him in a cell with a hostile and violent inmate from whom he should have been separated; that the inmate attacked him; and that he sustained physical injuries requiring medical treatment. However, Green failed to complete the next two steps of the BOP's administrative remedy process relating to his Eighth Amendment "failure to protect" claims. After Warden Wilson denied Green's BP-9

---

[5] The multi-step administrative remedies available to BOP inmates are set out in 28 C.F.R. §§ 542.10-.19. Section 542.13(a) demands that an inmate first informally present his complaint to the staff (this is done via a BP-8 form), thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written administrative remedy request to the Warden (this is done via a BP-9 form). *See id*. § 542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director (this is done via a BP-10 form), id. § 542.15(a), and if he is not satisfied with the Regional Director's response, he may appeal that decision to the Office of General Counsel (this is done via a BP-11 form), *id*.

The administrative procedure includes established response times. *Id*. § 542.18. As soon as an appeal is accepted and filed, the Warden has 20 days to respond; the Regional Director, 30 days; and General Counsel, 40 days. Only one extension of time of 20-30 days, in writing, is permitted the agency. If the inmate does not receive a response within the allotted time, including extension, he may consider the absence of response as a denial at that level. *Id*.

Request for Administrative Remedy on November 12, 2009, Green filed neither a BP-10 appeal to the MARO nor a BP-11 appeal to the Central Office as required under 28 C.F.R. § 542.13-15.

Instead, Green pursued other administrative remedies seeking only protective status transfers from both USP-McCreary and USP-Florence. First, in November of 2009, he submitted a request to the BOP Central Office, asking to be transferred for protection reasons; that request was denied on January 6, 2010. R. 10-2, p. 16. Second, in December of 2009, he submitted a BP-9 Request for Administrative Remedy to the Warden of USP-Florence; that request was rejected on December 21, 2009. *Id.*, p. 14.

The Supreme Court has held that in order to satisfy the requirement that administrative remedies be exhausted prior to filing suit, those remedies must be exhausted properly and within the time frames required by the remedy process. *Woodford v. Ngo*, 126 S.Ct. 2378, 2387-88 (2006). While Green broadly claimed that USP-McCreary officials impaired his ability to administratively exhaust his claims by confiscating or destroying his various remedy requests, the exhibits discussed above clearly refute that claim. Both the MARO and Central Office acknowledged receiving numerous administrative remedies which Green mailed to them, and both offices rejected Green's requests to consider his claims as "sensitive." The receipt of these remedies at various BOP levels contradicts Green's claim that USP-McCreary staff members hindered him from pursuing the administrative remedy process. Further, the fact that Green filed so many different administrative remedies, all of which were acknowledged, demonstrates that Green was in no way impaired from administratively exhausting his Eighth Amendment claims. Simply put, Green did not pursue the final two steps of the administrative remedy process set forth in Administrative Remedy No. 56891-FI with respect to his failure to protect claim.

This Court, and other district courts in this circuit, have held that, even in light of the Supreme Court's decision in *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007), *sua sponte* dismissal of a complaint is warranted where failure to exhaust is apparent from the face of the complaint. *See Smith v. Lief*, No. 10-8, 2010 WL 411134 at *4 (E.D. Ky. January 27, 2010); *Gunn v. Kentucky Depart. Of Corrections*, No. 07-103, 2008 WL 2002259, * 4 (W.D. Ky. May 7, 2008); *Spaulding v. Oakland County Jail Medical Staff*, No. 07-12727, 2007 WL 2336216, at *3 (E. D. Mich. August 15, 2007).

Further, when the affirmative defense of failure to exhaust appears on the face of the complaint, the complaint can be dismissed *sua sponte* on the ground that it fails to state a claim. *Jones v. Bock*, 549 U.S. 199, 214-15 (2007); 28 U.S.C. § 1915A(b)(1); *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007). Thus, Green's Amended Complaint seeking damages from the USP-McCreary defendants, for alleged Eighth Amendment "failure to protect" violations, fails to state a claim upon which relief may be granted.

Green's other Eighth Amendment claim, that the defendants defamed him, will be dismissed on the merits. Verbal abuse, harassment, and arbitrariness in dealing with inmates are not Eighth Amendment violations. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987).

Next, Green broadly alleged that the defendants violated his rights under the Fourteenth Amendment of the United States Constitution. R. 10, p. 4. As noted, the named defendants are federal and not state officials. Therefore, the Fifth Amendment governs Green's due process claims, not the Fourteenth Amendment, which applies only to claims asserted against officials acting under color of state law. As Green fails to articulate any cognizable Fourteenth Amendment claims against the defendants, the Court will dismiss those claims.

Finally, Green alleges that the defendants violated his Fifth Amendment rights by ignoring his various administrative grievances and thus denied him the benefit of a meaningful administrative remedy process. This claim lacks merit because there is no inherent constitutional right to an effective prison grievance procedure. *Argue v. Hofmeyer*, 80 F. App'x. 427, 430 (6th Cir. 2003); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991).

### B. Claims Seeking Injunctive Relief

To the extent that Green seeks injunctive relief in the form of a transfer to lower security prison; to a facility more to his liking; or to a facility closer to his family, he states no claim upon which relief can be granted for two reasons. First, as noted above, because Green is no longer confined in this district, and because this Court lacks personal jurisdiction over the Warden of USP-Florence, it has no authority to order the Warden of USP-Florence to provide any form of injunctive relief, even if such relief were warranted. An inmate's transfer to another prison moots his request for injunctive relief. *Lyons v. Azam*, 58 F. App'x at 87. Green must direct any request for injunctive relief to his current custodian, the Warden of USP-Florence.

Second, even if this Court had authority to grant any form of injunctive relief, which it does not, transfers and prison assignments are functions wholly within the discretion of the BOP. *Caderno v. Thoms*, 50 F. App'x 200, 201 (6th Cir. 2002) (citing *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983)). Accordingly, federal prisoners do not have a due process liberty interest in remaining free from discretionary transfers to less agreeable prisons, *Meachum v. Fano*, 427 U.S. 215, 225 (1976), or in being housed in a particular institution or a particular part of an institution. *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

11

Next, Green seeks an Order directing the BOP to take disciplinary actions against the defendants, *i.e.*, reprimanding them for their conduct against him. The Court will not meddle in BOP personnel and employment issues which rest solely in the hands of prison administrators. Courts are cautioned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987).

For these reasons, Green's Amended Complaint seeking both monetary damages and injunctive relief will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

### 3. Motion to Stop Interference with Incoming and Outgoing Mail and Motion to Inspect and Copy Documents

Green has filed a motion for an Order prohibiting the BOP and all outside agencies from interfering with his incoming and outgoing mail, R. 11. Green is now confined in USP-Florence, and has been since January of 2010, *see* R. 8. This proceeding involves claims asserted against USP-McCreary officials, based upon their alleged conduct at that facility in late 2009.

To the extent Green now asserts claims regarding the conditions of his current confinement in USP-Florence, such as the manner in which his incoming and outgoing mail is handled there, Green must present those new claims to USP-Florence prison officials, and then to the BOP, for consideration pursuant to 28 C.F.R. § 542.10-19.

If the grievance process is unsuccessful, Green may file a separate civil action in a Colorado federal court seeking injunctive relief. Venue is in the judicial district where either all defendants reside or where the claim arises. *Al- Muhaymin v. Jones*, 895 F.2d 1147, 1148 (6th Cir. 1990); 28 U.S.C. § 1391(b). This Court lacks venue over conditions of confinement claims arising in Colorado. 28 U.S.C. § 1391(b).

Finally, Green seeks an Order directing the BOP to produce for his inspection and copying documents in its possession. Specifically, Green seeks access to BOP documents pertaining to the SIS investigation of him at USP-McCreary in 2009, for having allegedly disclosed the named of inmate informants at the prison. *See* Motion, R. 14. As the Court is dismissing this action for failure to exhaust administrative remedies, it will deny as moot Green's motion to inspect and copy documents.

## CONCLUSION

Accordingly**, IT IS ORDERED** as follows:

(1) Plaintiff Christopher Green's Complaint, R. 2, and Amended Complaint, R, 10, are **DISMISSED WITH PREJUDICE**.

(2) Green's "Motion for Order to Stop BOP and Outside Agencies from Interfering with Civil Complaint and Mail," R. 11, is **DENIED**;

(3) Green's "Motion to Produce Documents for Inspection and Copying," R.14, is **DENIED**.

(4) This action is **DISMISSED** from the docket of the Court.

(5) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named defendants.

This September 30, 2010.



Signed By:

*Karl S. Forester* KSF

**United States Senior Judge**